The opinion of the Court was delivered by
Wardlaw J.
If the verdict in this case was a just response to the questions which were submitted to the jury, it has es *110 tablished that the transaction by which the land was conveyed to the defendant, Y. J. Culbertson, was not the execution of a new contract made in pursuance of a previous bona fide understanding ; that Y. J. Culbertson in procuring the transfer of the land to himself, was not actuated merely by the motive of obtaining indemnity against his suretyship; and that there was a fraudulent intention in the parties to that transaction, their purpose having been to hinder, delay or defeat Miss Smith’s cause of action. It cannot be said that there was not evidence to sustain the verdict. Men might honestly differ in the conclusions which they would draw from the testimony that was adduced, but the most charitable would be forced to acknowledge that there was something which required explanation, if it did not excite suspicion, in the destruction of the paper that was prepared to convey the land directly from the son to the father when no legal incumbrance existed, and the substitution of two deeds and a new note, which might well be supposed to have been intended to cover up and conceal the fact that title had been in the son. Supposing the fraudulent intention to have been found, we perceive that the case is like that of Lowry and Pinson, 2 Bail. 324 — not in the particular circumstances, but in the principles which governed that case. The observations which in the opinion given in that case were deduced from Twyne’s case, 3 Rep. 82; Worsley vs. De Mattos, 1 Burr, 474, and Cadogan vs. Kennett, Cowp. 434, apply with as much force to this as to that. Upon the grounds of appeal which were served' upon the circuit Judge, this Court then finds no reason for its interference.
An additional ground of appeal has, however, been exhibited in this Court, imputing misconduct to the jury in the jury-room, and founded upon an affidavit of one of the jurors, which is confirmed by the certificates of three others. Without dwelling upon the three months which elapsed between the rendering of the verdict - and the date of the affidavit, this Court has proceeded to consider the propriety of receiving the *111 affidavit of a juror, made after the separation of the jury, to show the misconduct of himself and his fellow-jurors in the jury-room. In several cases which have been before this Court within the last ten years, (Pulaski & Co. vs. Ward, 2 Rich. 120; Cohen vs. Roberts, 2 Strob. 416, and McCarty vs. McCarty, 4 Rich. 599,) affidavits of jurors and others have brought to the notice of the Court matters which imputed misconduct to some of the parties, their agents or friends, or to some of the jurors when they were out of the jury-room, and properly subject to the observation of other persons. In .such cases the Court has exercised its discretion, with intimations of the necessity of subjecting the introduction of such affidavits to severe restrictions.
But here' the privacy of the jury-room is to be invaded. The grounds upon which the assent of the jurors to the verdict publicly rendered was given are-to be scrutinized; and men sworn to render a true verdict according to the evidence, are to be heard declaring that they agreed to abide the determination of chance, and yielded their assent to the verdict only because they had entered into this agreement, plainly repugnant to the obligation of the oath they had taken.
The mischiefs, the delays, the arts, the scandal likely to ensue,, come naturally to our thoughts, when we .imagine encouragement given to the pursuit of jurors by disappointed suitors, for the purpose of obtaining affidavits to invalidate verdicts regularly rendered. Any affidavit made by a juror for this purpose, .after separation of the jury, is dangerous and suspicious-; but especially so is an affidavit showing gross impropriety, in which all the jurors participated, and which, at its. commission, was known only to themselves. A verdict decided by chance may be set aside; so may be a verdict which was decided by a bare majority of the jury, and one which was rendered against the will of any juror. Yet verdicts must generally be attained by compromise of some sort. The reasons of various jurors are no doubt often ridicu *112 lously absurd. There must, however, be an end of litigation. After a verdict had been rendered, and the jurors have dispersed, a juror 'would not be heard who would say that his assent was forced, or was given under some misconception, or according to some chance, whose decision he had privately resolved to adopt. His public solemn act would refute all such after-thoughts; and his silence, when he should have spoken, would outweigh his subsequent assertions. With like reason, the solemn act done by a jury as a body, should not be invalidated by affidavits contradictory of it, which some or all of the jurors may make concerning the private reasons which influenced the body, imputing misconduct to themselves, and not to other persons. Whether they have been misled by sophistry or mistake, or have adopted the determination of a majority or of chance, they have upon their oaths unanimously rendered a verdict in solemn form, and high considerations of justice and policy place that verdict beyond their future influence. Decency itself forbids that they should assail it by disclosing, to their own shame, the secrets of their conclave.
After experience of the consequences which must result from receiving affidavits of jurors such as that now before us, the Courts in England and some of these United States have declared them wholly inadmissible. (Vaise vs. Delaval, 1 Term. Rep. 11; Owen vs. Warburton, 4 Bos. & Pul. 326; Dana vs. Tucker, 4 Johns. 487; Willing vs. Swassey, Browne’s Penn. Rep. 127.) We are therefore of opinion that the affidavit made in support of the additional ground of appeal in this case cannot be heard.
Motion dismissed.
O’Neall, Withers, Whither, Glover and Muhro, JJ., concurred.

Motion dismissed.